IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| EMERALD CASINO, INC., ) | |
| ) | |
| Debtor. ) | |
| ) | |
| THE VILLAGE OF ROSEMONT, ) | |
| an Illinois municipal corporation, ) | |
| ) | No. 05 C 5012 |
| Plaintiff-Appellant, ) | |
| ) | |
| v. ) | |
| ) | |
| AARON JAFFE, *et al.*, ) | |
| ) | |
| Defendants-Appellees. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff-Appellant, the Village of Rosemont ("Rosemont") appeals the bankruptcy court's decision to grant Defendants-Appellees' motion to dismiss Rosemont's complaint seeking specific performance and injunctive relief (the "Complaint"). Rosemont has also moved for an injunction pending appeal. The Court has appellate jurisdiction over this matter pursuant to 28 U.S.C. § 158 and Rule 8001 of the Federal Rules of Bankruptcy Procedure. For the following reasons, the Court affirms the bankruptcy court's decision and denies Rosemont's motion for an injunction pending appeal.

**BANKRUPTCY PROCEEDINGS**

**I.     Factual Background**[1]

In 1992, the Illinois Gaming Board (the "Board") issued Debtor Emerald Casino, Inc. ("Emerald") an Illinois riverboat gambling license (the "License").  In 1993, Emerald began operating a casino in East Dubuque, Illinois.  Rosemont alleges that in April 1997, Emerald wanted to relocate its casino to Rosemont, and on September 24, 1999, Emerald submitted an application to the Board for the relocation.  Rosemont subsequently constructed a parking garage for the casino.  Rosemont claims that it is the rightful home dock site for the License, and that it is Emerald's largest unsecured creditor.

On March 6, 2001, the Board initiated disciplinary proceedings against Emerald to revoke the License (the "Disciplinary Proceedings").  Rosemont alleges in its Complaint that Emerald attempted to settle the Disciplinary Proceedings in a manner Rosemont viewed as detrimental to its rights and the rights of other creditors, and Emerald refused to reimburse Rosemont for the money it had expended in building the parking garage and preparing for the casino.  On June 13, 2002, Rosemont and four other creditors filed an involuntary bankruptcy petition against Emerald.  The bankruptcy court granted the petition in September 2002.  Emerald subsequently converted the involuntary bankruptcy into a voluntary bankruptcy under Chapter 11 of the Bankruptcy Code.

On December 15, 2003, Emerald entered into a letter agreement with the Illinois Attorney General ("IAG") and the Board.  The December 15, 2003 agreement provided for a

---

[1] These facts are taken from the Complaint, (R. 1-1; Compl.), and the bankruptcy court's August 16, 2005 oral decision (R. 25-2; Defs.-Appellees App., Aug. 16, 2005 Tr.).  The factual background underlying Rosemont's appeal is extensive.  The Court provides an abbreviated recitation of the relevant facts for purposes of this appeal.

bidding process to sell the License, followed by a suitability review by the Board of the successful bidder (the "Suitability Review"). Additionally, the agreement provided that the IAG and the Board would stay the Disciplinary Proceedings if Emerald met certain conditions set forth in the agreement. On May 11, 2004, the IAG advised Emerald that one of the conditions under the agreement had failed and that it elected to resume the Disciplinary Proceedings. Following the IAG's decision, Emerald revised its proposed plan of reorganization to reflect the absence of the IAG's support.

On May 17-18, 2004, the bankruptcy court held confirmation hearings on the proposed reorganization plan. During the confirmation hearings, three of the four then-current Board members testified that the Board supported the purposed reorganization plan, the plan satisfied the Board's regulatory concerns and the Board was prepared to take the steps necessary to implement the reorganization plan. Additionally, Emerald's counsel stated during the hearings that "the plan does not rely on an injunction against any state entity, not the [IAG] or the [Board]." (R. 25-9; Defs.-Appellees App., May, 17, 2004 Tr. 137:18-20.) When the bankruptcy court asked whether anything would prevent resumption of the Disciplinary Proceedings, other than a majority vote of the gaming board, counsel for Emerald responded "no." (*Id*. at 142: 3-9.) Furthermore, in a supplemental brief on the feasibility of the proposed plan, Emerald and the Official Committee of Unsecured Creditors did not argue that the proposed plan required the Board to complete the Suitability Review. Instead, they stated that the plan would be feasible because the Board did not oppose it.

On May 19, 2004, the bankruptcy court confirmed the Fifth Amended Joint Plan of Reorganization (the "Plan") with the understanding that the Plan would not bind the IAG or the

3

Board. On June 11, 2004, the IAG filed a *quo warranto* action against the Board and its members. That action sought, among other things, to permanently enjoin the Board from conducting the Suitability Review. On July 22, 2004, following modifications to the Plan, the bankruptcy court confirmed the Plan as modified on that date. On July 28, 2004, the Board adopted a resolution stating that it waived rights or defaults under the December 15, 2003 letter agreement.

On August 2, 2004, after the bankruptcy court confirmed the Plan, the Board sent a second letter agreement to Emerald. The IAG was not a party to that agreement. In the agreement, the Board agreed to conduct the Suitability Review, and suspend and ultimately dismiss the Disciplinary Proceedings. After the Board entered into this agreement, two of its four members resigned. New members were appointed on March 21, 2005. Rosemont alleges that shortly after their appointment, the Board resumed the Disciplinary Proceedings and placed the Suitability Review on hold.

## II. Procedural Background

On June 20, 2005, Rosemont filed the Complaint in the bankruptcy court. The Complaint consists of two counts: (1) Count I seeks specific performance of the Board's alleged commitments under the Plan, including completion of the Suitability Review in accordance with the Illinois Riverboat Gambling Act, 230 ILCS 10/1, *et seq*., and termination of the Disciplinary Proceedings; and (2) Count II seeks an injunction against the Disciplinary Proceedings and other conduct that allegedly violates the Plan. Rosemont has brought this suit against Aaron Jaffe, Chairman of the Board, Jeanette Tamayo, interim Administrator of the Board, and Board members Charles Gardner, Eugene Winkler, Gary Peterlin, and William Dugan.

On August 16, 2005, the bankruptcy court granted Jaffe's, Garner's, Winkler's and Tamayo's ("Defendants") motion to dismiss the Complaint pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure and Rule 12 of the Federal Rules of Civil Procedure.[2] The bankruptcy court set forth its reasons for dismissing the Complaint orally on the record.[3] The bankruptcy court found that the Plan did not require the Board to undertake the Suitability Review or to stay or dismiss the Disciplinary Proceedings. The bankruptcy court further found that Section 1142 of the Bankruptcy Code does not impose substantive obligations on third parties not contained in reorganization plans. Based on these findings, the bankruptcy court held that Rosemont could not use Section 1142 to enjoin the Disciplinary Proceedings or force the Board to resume the Suitability Review. As further support for its holding, the bankruptcy court explained that "the plan was premised on the fact that the gaming board was not obligated to undertake particular action by the plan." (R. 25-2; Defs.-Appellees App., Aug. 16, 2005 Tr. at 31:19-21.)

Regarding Rosemont's statutory due process claim, the bankruptcy court stated that Rosemont did not identify any particular procedural rights under the Bankruptcy Code that were

---

[2] Although Rosemont purported to seek relief from the Defendants both in their individual and official capacities, the bankruptcy court determined that the Complaint only sought a ruling that would bind the Board and the Defendants in their official capacities, and dismissed the Complaint as to all Defendants named in their individual capacities. Rosemont does not appeal that ruling. In their motion to dismiss, Defendants assert that Dugan and Peterlin have left the Board, and thus are no longer official capacity defendants.

[3] The bankruptcy court, in its oral opinion, decided a motion to dismiss a complaint that Emerald filed together with the motion to dismiss Rosemont's complaint. The bankruptcy court explained that it decided the motions together because Emerald and Rosemont relied on the "same basic facts" and raised "similar legal issues." (R. 25-2; Defs.-Appellees App., Aug. 16, 2005 Tr. at 6:22-25.) Here, the Court addresses the sections of the August 16, 2005 oral opinion that relate to Rosemont's complaint.

violated. The only procedural right that the bankruptcy court found would be applicable was the automatic stay set forth in 11 U.S.C. §362(a). The bankruptcy court, however, previously held (and was affirmed on appeal) that the exception to the automatic stay that allows a state agency to enforce its police and regulatory powers applies and allows the Board to resume the Disciplinary Proceedings.[4] For these reasons, the bankruptcy court dismissed the Complaint. Rosemont now appeals that dismissal.

## CURRENT APPEALS

Rosemont presents the following issues for appeal:

(1) Whether the bankruptcy court erred in dismissing Rosemont's claim for specific performance of the Plan pursuant to 11 U.S.C. §§ 1141, 1142(b) and 105(a);

(2) Whether the bankruptcy court erred in dismissing Rosemont's motion for a preliminary injunction pursuant to 11 U.S.C. §§ 1142(b) and 105(a);

(3) Whether the bankruptcy court erred in finding that Rosemont stated no claim for a deprivation of statutory due process;

(4) Whether the bankruptcy court erred in finding that it lacked *in rem* jurisdiction over the License pursuant to 28 U.S.C. § 1334(e);[5] and

---

[4] The bankruptcy court also stated that to the extent Rosemont is arguing that statutory due process rights allow it to pursue claims that arise under state law, those claims are barred by Illinois' sovereign immunity.

[5] On appeal, Rosemont argues that sovereign immunity does not extend to *in rem* proceedings, and asserts this case is an *in rem* proceeding. The bankruptcy court, however, did not hold that Rosemont's claims based on federal law were barred by the Eleventh Amendment, which "has been construed to forbid suits prosecuted against a state by its own citizens." *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 777 n.1 (7th Cir. 1991) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890)). Rosemont argues, and the bankruptcy court agreed, that the Complaint only relies on federal law. (*See* R. 25-2; Defs.-

(5) Whether the bankruptcy court failed to apply the proper legal standard in deciding Defendants' motion to dismiss.

## ANALYSIS

**I. Jurisdiction**

Rosemont has filed an appeal from the bankruptcy court's August 16, 2005 Order. The Court has jurisdiction to hear appeals from a bankruptcy court's "final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). Defendants argue that the Court does not have jurisdiction over this matter because the August 16, 2005 Order is not a final judgment. According to Defendants, the August 16, 2005 Order is not final because the bankruptcy court dismissed the Complaint "without prejudice" and did not issue a "judgment" pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure.

"A final order in a bankruptcy case, is one that resolves all contested issues on the merits and leaves only the distribution of the estate assets to be completed." *In re Wade*, 991 F.2d 402, 406 (7th Cir. 1993) (citations omitted). This definition of finality, which is applied in adversarial proceedings related to core bankruptcy proceedings, "is a less stringent interpretation of finality than that employed in most civil lawsuits." *Id*. (citations omitted); *see also In re Barker*, 768 F.2d 191, 193 (7th Cir. 1985) ("We have noted that the different meaning of finality in the bankruptcy context results from the unique nature of bankruptcy cases and may sometimes justify a more liberal reading of finality . . ."). To the extent that Seventh Circuit case law interpreting finality outside of the bankruptcy context is consistent with the less stringent finality

---

Appellees App., Aug. 16, 2005 Tr. at 14:22-25.) Therefore, the Court need not address the issue of whether the State of Illinois' sovereign immunity bars the Court from exercising jurisdiction over Rosemont's claims, or whether the *in rem* exception to sovereign immunity applies.

rules applicable to bankruptcy cases, the Court will look to that case law.

The general rule in the Seventh Circuit regarding finality outside the bankruptcy context is that an order dismissing a claim without prejudice is not an appealable final judgment because the plaintiff can file an amended complaint. *Furnace v. Bd. of Trs. of S. Ill. Univ.*, 218 F.3d 666, 669 (7th Cir. 2000) (citations omitted). There is, however, an exception to this rule that "applies when it is clear from the record that the district court found that the action could not be saved by any amendment of the complaint which the plaintiff could reasonably be expected to make." *Id.* (internal quotations and citations omitted); *see also Lakin v. Galloway*, 266 F.3d 718, 721 (7th Cir. 2001) (holding that judgment dismissing claim without prejudice was final and appealable where no amendment to complaint would permit it to go forward). Therefore, even outside of the bankruptcy context, "[t]he test for finality is not whether the suit is dismissed with prejudice or without prejudice . . . [it] is whether the district court has finished with the case." *Hill v. Potter*, 352 F.3d 1142, 1144 (7th Cir. 2003) (citations omitted). Moreover, when it is unclear if a judgment is final because of a court's "inconsistent signals,"

> the only safe route is to treat it as final: the alternative lays a trap for unwary (or even wary) litigants, who may forego appeal in reliance on the 'without prejudice' language only to learn later, and to their sorrow, that the original order was appealable and the time for appellate review has lapsed.

*Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003).

Here, the bankruptcy court dismissed Rosemont's Complaint "without prejudice." The bankruptcy court found that the Complaint did not "give grounds for relief" because Section 1142 of the Bankruptcy Code does not confer any substantive rights on Rosemont and Rosemont's statutory due process rights were not violated. Even though the bankruptcy court dismissed the complaint without prejudice, given its holding, no reasonably anticipated

8

amendment to the Complaint would change the bankruptcy court's ruling.

Furthermore, the record indicates that the bankruptcy court intended its judgment to be final and appealable. On August 17, 2005, the bankruptcy court's docket contains the entry of "Adversary case 1-05-ap-1431 Closed." Additionally, in hearing Emerald's motion to reconsider the August 16, 2005 Order, the bankruptcy court clarified that it had dismissed the federal claims with prejudice and the state claims without prejudice to permit Emerald to assert its substantive state law claims in state court. (R. 30-2; Rosemont Reply, Sept. 27, 2005 Tr. at 41:13-25, 42:1-8.) The August 16, 2005 Order is final for purposes of 28 U.S.C. § 158(a)(1), and the Court has jurisdiction over Rosemont's appeal.

## II. Standard of Review

The Court reviews the bankruptcy court's findings of fact for clear error and reviews its conclusions of law *de novo*. *In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004); *see also* Fed. R. Bankr. P. 8013. Bankruptcy court decisions involving the exercise of discretion are reviewed for abuse of discretion. *In re Modern Steel Trading Co.*, No. 91 C 5747, 1992 WL 82966, *3 (N.D. Ill. Apr. 1, 1992) (citing *In re American Reserve Corp.*, 841 F.2d 159, 162 (7th Cir. 1987)). Decisions granting or denying specific performance are reviewed under the abuse of discretion standard. *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1403 (7th Cir. 1997) (citations omitted). Decisions granting or denying a permanent injunction are likewise reviewed under the abuse of discretion standard. *Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 597 (7th Cir. 2001) (citations omitted). "[A] court abuses its discretion when it commits a clear error of fact or an error of law." *Vencor, Inc. v. Webb*, 33 F.3d 840, 844 (7th Cir. 1994) (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir. 1992)).

9

## III. Specific Performance

Rosemont argues that the bankruptcy court erred in dismissing its claim for specific performance. The Complaint sought specific performance of certain alleged contractual commitments including: (1) resuming the Suitability Review; (2) staying the Disciplinary Proceedings until completion of the Suitability Review; and (3) dismissing the Disciplinary Proceedings if the winning bidder was found to be suitable. The Board allegedly made these commitments by testifying before the bankruptcy court, adopting a resolution on July 28, 2004, and entering into the December 15, 2003 and August 2, 2004 letter agreements. According to Rosemont, the bankruptcy court should have ordered specific performance of these alleged commitments pursuant to 11 U.S.C. §§ 1141, 1142(b) and 105(a).

### A. 11 U.S.C. § 1142(b)

Rosemont argues that the bankruptcy court erred in failing to order specific performance of the Board's alleged commitments pursuant to Section 1142(b) of the Bankruptcy Code. The bankruptcy court held that "the current plan does not obligate the gaming board to resume the suitability review or suspend the administrative proceeding, and Section 1142 cannot be used as a basis for creating an obligation that does not exist under the plan itself."[6] (R. 25-2; Defs.-Appellees App., Aug. 16, 2005 Tr. 32:14-19.)

Section 1142(b) states:

> The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the

---

[6] The bankruptcy court also explained that "the plan was premised on the fact that the gaming board was not obligated to undertake particular action by the plan." (R. 25-2; Defs.-Appellees App., Aug. 16, 2005 Tr. 31:19-21.)

satisfaction of any lien, that is necessary for the consummation of the plan.

11 U.S.C. § 1142(b). Section 1142(b) of the Bankruptcy Code "governs a bankruptcy court's post-confirmation jurisdiction to implement Chapter 11 plans." *In re Cary Metal Prods., Inc.*, 152 B.R. 927, 931 (N.D. Ill. 1993). It provides bankruptcy courts with "broad authority . . . to order parties to comply with reorganization plans." *In re Goldblatt Bros., Inc.*, 132 B.R. 736, 741 (N.D. Ill. 1991). Section "1142(b) does not confer substantive rights so much as it empowers the bankruptcy court to enforce the unperformed terms of a confirmed plan." *In re U.S. Brass Corp.*, 301 F.3d 296, 306 (5th Cir. 2002). Accordingly, Section 1142(b) only provides bankruptcy courts with jurisdiction to enforce terms that are contained in reorganization plans. Indeed, even *In re Erie Hilton Joint Venture*, 137 B.R. 165 (W.D. Pa. 1992), a case upon which Rosemont relies extensively, acknowledges that Section 1142(b) provides courts with authority to direct a party to act only if the confirmed plan "so requires and . . . properly sets forth the agreement of the parties." 137 B.R. at 170.

Because Section 1142(b) does not provide bankruptcy courts with the authority to enforce terms outside of confirmed reorganization plans, the bankruptcy court was correct to inquire into whether the Plan contained the alleged commitments. The Plan does not incorporate by reference the testimony that the members of the Board gave during the confirmation hearings before the bankruptcy court. Nor does the Plan incorporate by reference the Board's July 28, 2004 resolution or the Board's August 2, 2004 letter agreement. Because the Board adopted the resolution and entered into the August letter agreement after the bankruptcy court confirmed the Plan, those documents could only become part of the Plan through modification of the Plan following a hearing and court confirmation. 11 U.S.C. § 1127(b); *see also In re Heartland Steel,*

*Inc.*, 389 F.3d 741, 745 (7th Cir. 2004) ("once a plan is confirmed . . . it may be modified only when the court confirms the modification"). The bankruptcy court did not make any such modification. Moreover, although the December 15, 2003 letter agreement is incorporated by reference in Section 5.10 of the Plan, and attached to the Plan, that letter agreement does not impose the alleged commitments on the Board because the conditions set forth in that letter agreement have failed.[7] Therefore, the Plan itself does not contain the Board's alleged commitments to resume the Suitability Review, and to stay and ultimately dismiss the Disciplinary Proceedings. Because the Plan does not contain these alleged commitments, and Section 1142(b) only authorizes bankruptcy courts to enforce provisions of confirmed reorganization plans, the bankruptcy court did not err in holding that Section 1142(b) did not authorize it to enforce the alleged commitments.[8]

### B. 11 U.S.C. § 1141

Additionally, Rosemont argues that the bankruptcy court erred in failing to address

---

[7] The December 15, 2003 letter agreement states that the IAG and the Board may revoke the commitments set forth in the agreement if any of a list of events occurs. One of the events is that "the Bankruptcy Court has not entered an order confirming the Plan . . . by April 1, 2004." (R. 25-5; Defs.-Appellees App., Dec. 15, 2003 Letter at 3.) Because the bankruptcy court did not enter an order confirming the Plan until May 19, 2004, this condition failed. Therefore, the IAG and the Board could revoke the commitments set forth in the December 15, 2003 letter agreement. Moreover, the Board's July 28, 2004 resolution waiving any defaults under the December 15, 2003 letter agreement does not effect the Plan because, as stated above, the Plan does not incorporate the resolution.

[8] Defendants raise additional arguments to defeat Rosemont's claim that it is entitled to specific performance in accordance with Section 1142(b) of the Bankruptcy Code. For example, they argue that adopting Rosemont's interpretation of Section 1142(b) would cause a conflict between that provision and Sections 1123 and 1129 of the Bankruptcy Code. Because the Court finds that Section 1142(b) of the Bankruptcy Code does not support Rosemont's claim for specific performance, the Court need not address Defendants' additional arguments.

12

Section 1141 of the Bankruptcy Code. According to Rosemont, Defendants are bound by the Plan pursuant to Section 1141. Section 1141 provides that

> *the provisions of a confirmed plan bind* the debtor, any entity issuing securities under the plan, *any entity acquiring property under the plan*, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. §1141(a) (emphasis added). Rosemont asserts that the Board is bound by the Plan because the State of Illinois will acquire property under the Plan and the Board has agreed to be bound by the Plan. *See Paul v. Monts*, 906 F.2d 1468, 1472 (10th Cir. 1990) (finding that Section 1141 binds a party ultimately acquiring property under a plan when the party receives the property or agrees to be bound). The bankruptcy court stated that "the parties acknowledge that neither the Illinois Attorney General nor the gaming board would be bound by the plan itself" and "[t]he court expressly approved the plan with that understanding." (R. 25-2; Defs.-Appellees App., Aug. 16, 2005 Tr. 12:3-7.) The Court, however, need not determine whether the Board is bound by the Plan. As addressed above, the Plan does not contain the Board's alleged commitments. Therefore, even if the Board were bound by the Plan, the Board would not be required to complete the Suitability Review, or to stay or dismiss the Disciplinary Proceedings. Accordingly, Rosemont's Section 1141 argument fails.

    **C.**    **11 U.S.C. § 105(a)**

Rosemont further argues that the bankruptcy court erred in failing to order specific performance of the Board's alleged commitments pursuant to 11 U.S.C. § 105(a). Section 105(a) states that a "court *may* issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (emphasis added); *see*

*also In re Kmart Corp.*, 359 F.3d 866, 871 (7th Cir. 2004). Section 105(a) does not "authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, [nor does it] constitute a roving commission to do equity." *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986). The bankruptcy court declined to exercise its discretion to order specific performance pursuant to Section 105(a). Rosemont has not set forth any basis for finding that the bankruptcy court abused its discretion in failing to do so, especially considering that Sections 1142(b) and 1141(a) of the Bankruptcy Code do not compel an order of specific performance. The Court will not substitute its judgment for the bankruptcy court's sound judgment. *See In re Emerald Casino, Inc.*, No. 03-5457, 2003 WL 23147946, at *10 (N.D. Ill. Dec. 24, 2003).

### D.     Contractual Commitments

Rosemont also argues that the bankruptcy court should have enforced the Board's alleged commitments as "binding contractual obligations." (R. 12-1; Rosemont Br. at 37.) In support of its position, Rosemont cites cases such as *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753 (7th Cir. 2002), for the proposition that "[a] confirmed plan of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations." 304 F.3d at 755. Arguing that the Plan is a binding contract, however, does not justify ordering specific performance of the Board's alleged commitments because, as addressed earlier, those commitments are not contained in the Plan. Therefore, the bankruptcy court did not abuse its discretion in denying Rosemont's request for specific performance.

## IV.     Injunction

Rosemont also appeals from the bankruptcy court's decision to deny its request for an injunction to enjoin the Disciplinary Proceedings. Rosemont argues that injunctive relief is specifically available under Sections 1142(b) and 105(a) of the Bankruptcy Code.[9] The Court disagrees.

A.  Section 1142(b)

Section 1142(b) of the Bankruptcy Code does not create substantive rights. *See Brass*, 301 F.3d at 306. Instead, it empowers bankruptcy courts to enforce terms of confirmed plans. *Id*. Here, the Plan does not contain any terms requiring that the Disciplinary Proceedings be enjoined. For the reasons stated above, the Plan does not include any commitments to enjoin the Disciplinary Proceedings as set forth in the August 2, 2004 letter agreement, the July 28, 2004 resolution or the testimony before the bankruptcy court. Moreover, in Section 5.10 of the Plan, the Board explicitly reserved the right to resume the Disciplinary Proceedings in the event that any of the conditions set forth in the Plan or in the December 15, 2003 letter agreement, incorporated in the Plan by reference, failed. Because at least one condition failed, the Plan allowed the resumption of the Disciplinary Proceedings. Additionally, Section 14.15.1 of the Plan specifically excludes the Board and the State of Illinois from the permanent injunctions imposed by the Plan. Testimony by Emerald's counsel before the bankruptcy court provides further evidence that the Plan does not require that the Disciplinary Proceedings be enjoined. On May 17, 2004, Emerald's counsel testified that the Plan "actually has no injunction" against the

---

[9] Rosemont also argues that an injunction is available under the exception to the Eleventh Amendment set forth in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). The Court, however, need not address that argument because the bankruptcy court did not hold, as Rosemont suggests, that the Eleventh Amendment barred Rosemont's claims based on federal law.

15

Board or the Disciplinary Proceedings. (R. 25-8; Defs.-Appellees App., May 17, 2004 Tr. 11:18.) Because the Plan does not contain any terms enjoining the Disciplinary Proceedings, and Section 1142(b) only empowers courts to enforce terms of confirmed plans, the bankruptcy court did not abuse its discretion in declining to enjoin the Board from continuing the Disciplinary Proceedings pursuant to Section 1142(b).

### B. Section 105(a)

Rosemont argues that Section 105(a) of the Bankruptcy Code provides bankruptcy courts with the power to stay proceedings in other courts, and that the bankruptcy court should have used this power to protect the property of Emerald's estate by enjoining the Disciplinary Proceedings. In related litigation, Emerald requested an injunction under Section 105 to enjoin the Disciplinary Proceedings. The bankruptcy court declined to issue the injunction. On appeal, the district court stated that it "will not substitute its judgment for the considered judgment of the bankruptcy court, which declined to issue an injunction [pursuant to Section 105]." *Emerald*, 2003 WL 23147946, at *10. This previous holding, declining to issue an injunction under Section 105, is arguably the law of the case. "The law of the case doctrine is a rule of practice which recited that when an issue is once litigated and decided, that should be the end of the matter." *Analytical Engineering, Inc. v. Baldwin Filters, Inc.*, 425 F.3d 443, 454 (7th Cir. 2005) (citations omitted). The Court should not revisit this issue.

Moreover, Rosemont has not established that the bankruptcy court abused its discretion in declining to enjoin the Disciplinary Proceedings. The gravamen of Rosemont's argument is that the Disciplinary Proceedings, which may result in the revocation of Emerald's license, threaten to destroy the bankruptcy estate. The *Emerald* court found that the Disciplinary

16

Proceedings did not violate the automatic stay of litigation required under 11 U.S.C. §362(a) because the Board, in conducting the proceedings, was acting pursuant to its police and regulatory power.[10]  *Emerald*, 2003 WL 23147946 at *4-5.  The *Emerald* court allowed the Disciplinary Proceedings to go forward under the exception to the stay despite the fact that "the proceeding would deplete the debtor's assets." *Id*. at *9-10 ("this court would not find an injunction appropriate on the basis that license-revocation proceedings would result in the transfer of Emerald's license to the State, because in section 362(b)(4) Congress has expressly approved of this result").  Because the Disciplinary Proceedings serve a legitimate police power and regulatory interest, and neither the Plan nor the Bankruptcy Code require that the proceedings be enjoined, the bankruptcy court did not abuse its discretion in declining to enjoin the proceedings under Section 105(a).

## V.	Statutory Due Process

Rosemont argues that the Disciplinary Proceedings – to which Rosemont is not a party – have been conducted in a manner that has deprived Rosemont of the statutory due process protections provided by Sections 105, 1109, 1141, and 1142 of the Bankruptcy Code.  Rosemont, however, fails to identify any specific statutory due process protection that allegedly has been violated.  The closest Rosemont comes to articulating such a protection is its statement that "Sections 105 and 1141 of the Bankruptcy Code provide procedural protections to plan participants by creating a procedure for enforcing a confirmed bankruptcy plan." (R. 12-1: Rosemont Br. at 50.)  This purported "procedural protection," however, does not help Rosemont

---

[10] Proceedings of governmental units enforcing their police and regulatory powers are exempted from the automatic stay.  11 U.S.C. § 362(b)(4).

17

because the Plan does not require a stay or dismissal of the Disciplinary Proceedings. Rosemont's argument fails.

## VI. Proper Standard for Motion to Dismiss

Rosemont argues that the bankruptcy court failed to use the appropriate legal standard when evaluating Defendants' motion to dismiss, and as such, the bankruptcy court's findings of fact were clearly erroneous. Rosemont asserts that the bankruptcy court erred in: (1) failing to address the Board's involvement in the process of selling the License, selecting a winning bidder and drafting the Plan; (2) disregarding the significance of the Board's prior support for the Plan; (3) ignoring the impact of Sections 5.10 and 11.7 of the Plan; and (4) asserting that all parties acknowledged that the Board was not bound by the Plan.

The bankruptcy court's oral opinion begins with a recitation of the appropriate standard to evaluate a motion to dismiss. (R. 25-2; Defs.-Appellees App., Aug. 16, 2005 Tr. 7:3-17.) Specifically, the bankruptcy court stated that "under Rule 12(b)(6) of the Federal Rules of Civil Procedure, incorporated into Rule 7012 of the Federal Rules of Bankruptcy Procedure, the court must assume the truth of all facts asserted in the complaint, construing the allegations liberally and viewing them in the light most favorable to the nonmoving party." (*Id*. at 7:3-10) (citations omitted). The bankruptcy court adhered to that standard throughout its opinion.

The bankruptcy court's failure to orally address every fact alleged in the Complaint does not indicate that it failed to view the Complaint in the light most favorable to Rosemont. The alleged facts that the bankruptcy court purportedly omitted from its opinion, such as the Board's involvement in the process of selling the License, have no bearing on the determination of whether the Plan required the Board to resume the Suitability Review or to stay the Disciplinary

18

Proceedings. The bankruptcy court did specifically acknowledge that the Board initially supported the Plan, testified in support of the Plan and entered into the August 2, 2004 letter agreement. The bankruptcy court correctly found that the Board's initial support for the Plan "does not preclude the current gaming board from seeking to enforce its regulatory interests." (*Id*. at 29:15-17.) Furthermore, Sections 5.10 and 11.7 of the Plan do not, as Rosemont asserts, impact the enforceability of the Board's July 28, 2004 resolution or the August 2, 2004 letter agreement, both of which were entered into following confirmation of the Plan. Additionally, the bankruptcy court did not draw inferences against Rosemont when it stated that "[a]ll of the parties acknowledged" that the Board's initial support for the Plan was not binding.[11] (*Id*. at 29:1-12.) It appears that the bankruptcy court simply interpreted Emerald's counsel's testimony at the May 17, 2004 confirmation hearings to mean that the Plan was not intended to be binding on the Board. In any event, the bankruptcy court's ultimate decision was based on its correct interpretation of the Plan itself. (*See id*. at 13:13-17, 19:15-17, 32:8-13.) Accordingly, the bankruptcy court's findings of fact were not clearly erroneous, and dismissal of the Complaint was appropriate.

## VII. Preliminary Injunction

Rosemont has also moved for an injunction pending appeal pursuant to Federal Rule of Bankruptcy Procedure 8005. "In considering whether to grant a stay pending appeal under

---

[11] Rosemont also argues that the bankruptcy court should not have considered this alleged fact because Rosemont did not include it in the Complaint. The bankruptcy court relied on the testimony provided at the March 2004 confirmation hearings as support for its assertion. Rosemont attached as Exhibit 6 to the Complaint the transcript to these hearings. Thus, the bankruptcy court properly considered it. *See Continental Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 731 n.2 (7th Cir. 2005) (stating that courts can consider documents referred to in complaints).

Bankruptcy Rule 8005, courts consider the following four factors: 1) whether the appellant is likely to succeed on the merits of the appeal; 2) whether the appellant will suffer irreparable injury absent a stay; 3) whether a stay would substantially harm other parties in the litigation; and 4) whether a stay is in the public interest." *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997) (citations omitted). Because the Court affirms the bankruptcy court's dismissal of the Complaint, Rosemont's request for an injunction pending appeal is denied as moot.

## CONCLUSION

For these reasons, the Court affirms the bankruptcy court's decision to grant Defendants' motion to dismiss, and denies Rosemont's motion for an injunction pending appeal.

Dated: December 7, 2005                                  ENTERED:

                                                         _____
                                                         AMY J. ST. EVE
                                                         United States District Court Judge